WACO STATE BANK v. STEPHENSON MANUFACTURING COMPANY.

No. 280.

**Community Property—Garnishment—Practice.**—A private corporation was garnisheed in an action against an alleged owner of stock in the corporation. The secretary of the corporation answered, showing the transfer of stock to the wife, and that the defendant had stated that it was her separate property. The plaintiff accepted the answer of the garnishee. The defendant controverted it, alleging under oath that the stock was the separate property of the wife. On the trial the plaintiff was not allowed to introduce testimony; the defendant introduced none showing his wife's separate ownership. *Held:*

1. The pleadings of the defendant sufficiently alleged the relationship of husband and wife.

2. That the stock was acquired during coverture rendered it prima facie community property.

3. The affidavit of the husband controverting the answer of the garnishee was not evidence on the trial of the truth of its contents.

4. In such case, judgment should have been entered against the garnishee.

APPEAL from the County Court of McLennan. Tried below before Hon. W. H. JENKINS.

*Herring & Kelley*, for appellant, cited, Rev. Stats., arts. 187, 191, 208, 211, 212, 586, 590.

*Baker & Prendergast*, for appellee, cited, Rev. Stats., arts. 193, 211; McRee v. Brown, 45 Texas, 503; Scurlock v. Railway, 77 Texas, 481.

COLLARD, ASSOCIATE JUSTICE.—This is a garnishment proceeding, ancillary to the suit of appellant, the Waco State Bank, against W. S. Martin, the writ and its service upon the garnishee of date 17th of January, 1891. The appellee, the Stephenson Manufacturing Company, is a private corporation, and as such, in addition to the usual answers, was required to answer as to W. S. Martin's ownership of shares of stock of the company or interest therein.

The answer of the garnishee upon this subject is as follows: " That said company, or affiant," its secretary and business manager, " has no positive knowledge as to whether or not the said W. S. Martin was at the time of the service of said writ or now is in any way interested in said Stephenson Manufacturing Company; that the books and records of said company did not at the time of the service of said writ, and do not now, show that the said W. S. Martin now owns or ever owned any shares or share in the stock of said company; that the following are all of the facts known to affiant or said company relating to said W. S. Martin's connection with or interest in, if any, share or shares of the stock of said company: In October, 1890, A. Symes was the owner of five shares, of the

par value of $100 each, in the said Stephenson Manufacturing Company; and about the middle of October, 1890, said A. Symes called at the office of said company and told affiant that he, Symes, had sold his stock to 'Mr. Martin,' and that he, Symes, would be down in a few days to have it transferred; affiant then asked, 'What Martin;' and said Symes replied, 'The sheep man Martin.' On October 22, 1890, said Symes called again at the office of said company and produced his certificate for said shares of stock, and said to affiant he, Symes, then wished to have the stock transferred to Martin. Affiant, who was then the business manager of said corporation herein garnisheed, then instructed the bookkeeper of said company to fill out a new certificate of stock; and he, said bookkeeper, asked said Symes in what name the certificate should be written; to which Symes replied, 'M. E. Martin.' Said bookkeeper also then, at the instance of affiant, wrote in the office record book of said company an acknowledgment of the fact that A. Symes had sold his said shares of stock to M. E. Martin, which affiant then requested said Symes to sign; this said Symes refused to do, saying that it was unnecessary; and thereupon affiant refused to issue the certificate, for the reason that the by-laws of said company required affiant to keep such a record.

"Said Symes then went away, and returned next day with said W. S. Martin, and the former said they now desired to make said transfer; and he also remarked that he had consulted Mr. Seley and others, and that it was not proper for affiant to require him to sign a record stating to whom he had sold his stock. Affiant still insisted that such record be kept, and at length said Symes signed such record of sale of said shares of stock to M. E. Martin, and Symes returned certificate of stock number 17 for said five shares, and affiant, in exchange therefor, then issued and delivered to said Martin stock certificate number 21, issued to M. E. Martin for five shares of stock in said corporation, of the par value of $100 each; and said Martin received the same, and on the stub of the stock book of said company receipted for the same, signing simply, 'M. E. Martin.' That a few days after said transfer of stock, Mr. W. W. Seley, of the Waco State Bank, met affiant, and asked if Mr. Symes had transferred his said stock to Martin; and affiant answered in the affirmative, affiant then supposing that the said W. S. Martin's initials were 'M. E.' That about the middle of the month of December, 1890, said W. S. Martin called at the office of said company and told affiant that M. E. Martin was his wife, and that said stock belonged to her, which was the first time affiant heard of Mrs. Martin in connection with the matter, and the time when affiant first learned the initials of said W. S. Martin. That a few days after the service of the writ of garnishment herein, Mr. H. C. Wilson called at the said office and told affiant that he had purchased the said five shares of stock, and asked that the same be transferred to him, and affiant refused to make any transfer

of said stock because of said writ having been served on said company. Affiant says that the above is a full and correct statement of all the facts relating to the connection of said W. S. Martin, if any, with the stock of said corporation, as the same were and are known to said corporation and are recollected by affiant;   *   *   *   and that said stock now stands on the books of said company in the name of ' M. E. Martin.' ' '

Plaintiff made no reply to the answer of the garnishee; but defendant Martin did controvert it under oath.   Sayles' Civ. Stats., art. 212.

He denies that the stock is his property, but says it is the separate property of his wife, M. E. Martin, or of Wilson.   For that, he says, before the writ of garnishment it was the separate property of his wife; that on July 1, 1890, he and his wife owned a homestead in McLennan County of 200 acres of land, a part of a larger tract owned by them; that about October 1, 1890, they sold the homestead, with the other land, to A. Symes; that before the sale, and before his wife would agree to sell the homestead, it was agreed between defendant, his wife, and Symes that the stock should be assigned to his wife as her separate property, as part consideration of the homestead, and that in compliance with the agreement, and as part consideration to her for the homestead, Symes, on October 1, 1890, transferred the stock to her, and that it has all the time until the sale to Wilson been her separate property, and is not and never was the community property of himself and wife, is not and never was subject to the payment of his debts.

Defendant also, in due order of pleading, excepted to plaintiff's maintaining the suit, as the answer of the garnishee shows that Mrs. M. E. Martin and H. C. Wilson should be made parties defendant, and that the answer also shows that M. E. Martin or Wilson, and not defendant, was the owner of the stock.

The garnishee demurred to defendant's answer, upon the ground that it states no facts in addition to, and does not deny the facts set up in the garnishee's answer.

Plaintiff, the Waco State Bank, moved to strike out the answer of the defendant W. S. Martin, because it does not controvert the answer of the garnishee, and because Martin alleges that the stock was transferred to one H. C. Wilson, but shows no reason why he should make defense for Wilson, who is not a party to the suit.   Plaintiff denied the answer of Martin, and alleged that at the time of the alleged transfer of the stock to M. E. Martin, W. S. Martin was insolvent, and the pretended transfer to his wife was fraudulent, and that the subsequent transfer by Martin and wife to Wilson was also fraudulent, intended to hinder and delay creditors of W. S. Martin, including plaintiff, and passed no title; and that the stock belonged to the community estate of Martin and wife, and was subject to the garnishment.   Plaintiff's reply was not sworn to.

Defendant demurred to the reply of plaintiff, and denied the facts stated.

The cause was submitted to the court upon the law and facts. The demurrer of the garnishee to the answer of defendant, and the exceptions of plaintiff to such answer, were overruled, plaintiff reserving exception. The court sustained defendant's objections to any evidence on the part of plaintiff, to which plaintiff excepted; and judgment was rendered discharging the garnishee upon its answer, adjudging costs against plaintiff, including $20 as attorney fee in favor of the garnishee. Plaintiff appealed.

*Opinion.*—We will notice but one of appellant's assignments of error, to the effect that the court should have rendered judgment in favor of plaintiff upon the answer of the garnishee, which showed that the garnishee held stock subject to garnishment belonging to the community of Martin and wife.

The answer of the garnishee stated facts, which, in our judgment, in the absence of proof to the contrary, established the fact that the stock was the community property of W. S. Martin and his wife. The garnishee states in the answer that Martin informed him that M. E. Martin was his wife; this statement would be an admission of the fact against the interest of the defendant, and besides this, he sets up the fact in his answer. The fact that she was his wife was in this manner unquestionably before the court. She being his wife at the time of the acquisition of the stock would constitute it community, unless the contrary be shown. Defendant controverted this conclusion by his sworn answer, setting up facts which put the title in the wife in her separate right. His answer did not prove itself. The burden was upon him to establish it by evidence. His answer controverted the answer of the garnishee, which the answer of the garnishee made a prima facie case in favor of plaintiff. The answer of the garnishee did not state as a fact that the property was the separate property of Mrs. Martin, or facts that would make it her separate property; it only stated that Martin said it was her property, which was a statement of hearsay. It was made to appear by the answer of the garnishee, that the stock was community of Martin and wife. This fact not being controverted by proof, the court should have entered judgment against the garnishee, as required by the statute. Rev. Stats., arts. 208, 209; see, also, arts. 205, 206.

Such judgment could not affect the rights of persons not parties to the suit, so that if the stock was in fact the separate property of Mrs. Martin, and had been transferred to Wilson, he would not be prejudiced by the judgment against the garnishee. If the stock was transferred to Mrs. Martin as her separate property as part consideration of the sale of their homestead by her and her husband to Symes, the transfer to her would

not be a fraud upon creditors. They could have no interest in such a transaction, and would not be injured.

In view of the condition of the case, and after proper consideration of the matter, we have concluded it would be best not to render judgment final in this court, but to reverse the judgment of the court below and remand the cause for another trial; and it is so ordered.

*Reversed and remanded.*

Delivered September 20, 1893.